STATE OF GEORGIA
SUPERIOR COURT OF DEKALB COUNTY

| | | |
|---|---|---|
| MARK A. THOMPSON, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | FILE NO.  16-cv-5485-4 |
| v. | : | |
| | : | |
| | : | **JURY TRIAL DEMANDED** |
| DEKALB COUNTY, GA; and | : | |
| OVERTIS BRANTLEY, in her individual capacity, | : | |
| | : | |
| Defendants. | : | |

## <u>AMENDED COMPLAINT</u>

Plaintiff Mark A. Thompson ("Plaintiff" or "Thompson") files the following Complaint against Defendant DeKalb County, GA ("County") and Overtis Brantley, in her individual capacity ("Brantley"):

### INTRODUCTION

1.

This is a lawsuit for equitable relief and monetary damages based on the retaliatory termination of Mark Thompson by DeKalb County under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 *et seq.*  Thompson also asserts an age discrimination claim against the County under the Age Discrimination in Employment Act, a race discrimination claim against the County under Title VII, and race discrimination claims under 42 U.S.C. § 1981 and the Fourteenth Amendment, against the County & Brantley.

### THE PARTIES

2.

Thompson is a resident of Fulton County, Georgia, but subjects himself to the jurisdiction of this Court.

3.

Thompson is a "public employee" as defined by the Georgia Whistleblower Act, O.C.G.A. § 45-1-4(a)(3).

4.

Defendant DeKalb County is a "public employer" as defined by O.C.G.A. § 45-1-4(a)(4).

5.

Defendant County is a covered employer as defined by Title VII and the ADEA.

6.

Defendant County may be served with process via personal service upon the interim DeKalb County CEO, Lee May, at the office of the DeKalb County CEO, Manuel J. Maloof Center, 1300 Commerce Drive, 6th Floor, Decatur, GA 30030.

7.

Defendant Brantley is a resident of the Northern District of Georgia and is subject to this Court's jurisdiction. She may be served with process via personal service at her place of business at DeKalb County Attorney, DeKalb County Law Department, Manuel J. Maloof Center, 1300 Commerce Drive, 6th Floor, Decatur, GA 30030.

**JURISDICTION AND VENUE**

8.

This Court has subject matter jurisdiction over claims pursued under the Georgia Whistleblower Act, O.C.G.A. 45-1-4(e)(1).

9.

Venue is proper in this Court because the actions alleged in this lawsuit occurred in DeKalb County.

## ADMINISTRATIVE PROCEEDINGS

10.

Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

11.

On March 23, 2017, the EEOC issued Plaintiff his notice of right to sue.

12.

All administrative prerequisites for filing suit on Plaintiff's Title VII and ADEA claims have been satisfied.

## FACTUAL ALLEGATIONS

13.

Thompson is a white man who was 54 years-old when Defendants terminated his employment.

14.

Thompson served as an attorney in the DeKalb County Law Department for eleven-and-a-half years before his termination.

15.

In 2010, Thompson was assigned to defend the County on a lawsuit filed by Paul Champion ("Champion"), d/b/a Champion Tree Service. In that case, Champion alleged that the County owed him money for breach of contract.

16.

While investigating Champion's allegations, Thompson uncovered that Champion had massively overbilled the County, that no legally binding contract for services actually existed

between Champion and the County, and that the County had overpaid Champion by at least $650,000.

17.

Thompson investigated further to learn that another County contractor, Brown and Caldwell, had overbilled the County over $800,000 to pay Hadi Haeri, through his corporation Universal Business Development, Inc., for services that were not legally contracted for by the County and were extremely dubious.

18.

Thompson also uncovered that Nagmeh "Nadine" Maghsoudlou, then a deputy director of Watershed Management, had managed the contracts between the County and both Champion and Brown and Caldwell. Hadi Haeri was Maghsoudlou's brother-in-law. Haeri, either directly or through his corporation, UBD, had received roughly $700,000 in kickbacks from Champion, $742,000 in kickbacks from Brown and Caldwell, and $535,000 in kickbacks from DMD Engineering & Construction, Inc., a subcontractor of Brown and Caldwell.

19.

In February of 2011, Thompson met with representatives of the DeKalb County District Attorney's Office. He provided evidence that conclusively showed that Champion had overcharged the County by over a half-million dollars. In doing so, he laid out the scheme which had Haeri receiving kickbacks for contracts that his sister-in-law, Maghsoudlou, was managing.

20.

In March of 2011, Thompson, on behalf of the County, moved to add additional claims against Champion and new parties to the action, as the County sought to add Haeri, his corporation,

Maghsoudlou, and Brown and Caldwell. After multiple hearings and an appeal, Haeri, UBD, and Maghsoudlou were added as counterclaim Defendants in 2014.

21.

In January of 2012, a special purpose grand jury was empaneled to investigate corruption in the DeKalb County Department of Watershed Management. In February of 2012, Thompson testified before the grand jury. The special purpose grand jury report was made public in August 2013. The grand jury found unequivocal evidence that multiple Champion Tree Services invoices had been inflated, and that Champion charged the County for services that he had not even provided. It also found severely questionable bidding issues in the Champion bids, and the network among the conspirators, Champion, Haeri, and Maghsoudlou, and John Walker, the Compliance Manager at Watershed Management, which led to Vernon Jones, the CEO of DeKalb County. The grand jurors also found that William "Wiz" Miller, the DeKalb County Public Safety Director, had interfered with and later halted a police investigation of Champion's contracts, as the detectives working on the case had been ordered to cease the investigation.

22.

In the late winter or early spring of 2013, Brantley became the County Attorney for DeKalb County.

23.

Shortly after Brantley's arrival, she met with every single attorney in the Law Department in one-on-one meetings. In the course of those meetings, she met with Thompson. During their meeting, Thompson informed her of the Champion case, which was on appeal. He told her of the corruption that he had uncovered and the subsequent grand jury investigation. Thompson also suggested that more personnel be assigned to the case. ▮

5

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
█████████████████

24.

Pursuant to his investigation, Thompson spoke with Viviane Ernstes, a chief deputy county attorney, about the County's procedures for entering into and approving contracts. During the spring of 2014, these discussions became more frequent and detailed, as Thompson sought to better understand the law regarding county contracts and the manner in which the County approved of and executed contracts. ███████████████████████████

███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
█████████████████

25.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████

26.

On January 31, 2014, Champion filed an amended Complaint, now alleging that Purchasing and Contracting Director Kelvin Walton had interfered with the contract, and that Walton had asked Champion to bribe him in order for Champion to be paid.

27.

With the consent of Duane Pritchett, his supervisor, Thompson filed an amended answer for the County in May 2014, denying that there was a valid contract.

28.

By the summer of 2014, the County finally granted Thompson's request and hired outside counsel to defend the County in the Champion litigation. ███████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
█████████████████  ████████████████████████████
████████████████████

29.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████.

30.

After the County's motion for summary judgment based on sovereign immunity was denied, the County prepared to appeal the decision. ███████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████.

31.

In December 2014, Brantley held a meeting with Thompson and Johnson. At this meeting, Brantley berated Thompson for asking to withdraw from the case. She repeatedly stated that Thompson was not a "team player."  Nevertheless, Brantley finally relented and allowed Thompson to withdraw.

32.

In February 2015, the Court of Appeals dismissed the County's appeal of the lower court ruling denying summary judgment to the County. At that point, the County sought relief from the Georgia Supreme Court.

33.

The County, through Brantley, terminated Thompson on June 24, 2015 citing only his actions in the Champion case.

34.

While Defendants targeted Thompson because he uncovered and disclosed waste, fraud, and abuse, his race and age also contributed to his termination. During numerous staff meetings, Brantley explained her plan for the Law Department to hire "baby lawyers" and spoke of her plans to fill the "nursery." She also announced Interim CEO Lee May was tired of looking around the County workforce and seeing people older than him.

35.

In compliance with May's wishes, Brantley informed May that she was seeking younger lawyers and May approved of this hiring strategy.

36.

Brantley also told one of Thompson's white co-workers that he needed to get a tan if he wanted to keep working for DeKalb County. He resigned in lieu of termination before Thompson's termination.

37.

Since May and Brantley's arrival, two senior white attorneys over the age of 40, including Thompson, were terminated. They were both replaced with lawyers younger than 40.

38.

Since Brantley's arrival at the Law Department, older white men, who were long-term employees, were discharged or resigned in lieu of discharge at a disproportionate rate as compared to any other demographics of the work force.

39.

In addition to hiring younger lawyers, more often than not, Brantley hired black employees to take the place of white employees.

**GOVERNMENTAL AND DECISIONMAKER LIABILITY**

40.

At all times material to this Amended Complaint, and while engaging in all of the conduct giving rise to Plaintiff's claims, the Defendants acted under color of state and local law.

41.

Defendant Brantley was, at all times material to this Amended Complaint, the highest department official with authority to hire, fire, transfer, demote, promote, discipline, and take other personnel actions affecting employees of the County Law Department, including Plaintiff.

42.

Defendant Brantley's above-pled employment actions were not subject to, and did not require, higher review or approval.

43.

Defendant Brantley was the Office's final decision maker with respect to each of the unlawful employment actions giving rise to this Amended Complaint.

44.

Defendant Brantley was the Office's final policymaking authority with respect to the functions giving rise to this Amended Complaint including, without limitation, disciplinary actions taken against Plaintiff.  In making the decisions giving rise to this Amended Complaint, Brantley exercised final policymaking authority delegated to her by the County.

**PUNITIVE DAMAGES**

45.

Defendant Brantley undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to the Plaintiff and his federally protected rights.

46.

Additionally and in the alternative, Defendant Brantley undertook all of the above-pled conduct with reckless disregard for the Plaintiff and his federally protected rights.

**COUNT I**
**Violation of O.C.G.A. § 45-1-4 – the Georgia Whistleblower Act**

47.

Based on the facts alleged above, Plaintiff asserts a claim under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4.

48.

At all times relevant to this action, Defendant DeKalb County was Plaintiff's employer and was a "public employer" as defined by O.C.G.A. § 45-1-4(a)(4).

49.

At all times relevant to this action, Plaintiff was a "public employee" as defined by O.C.G.A. § 45-1-4(a)(3).

50.

While employed with Defendant, Plaintiff engaged in protected activity when he disclosed violations of laws, rules, or regulations to his supervisors.

51.

Defendant DeKalb County took an adverse action against Plaintiff by terminating his employment in retaliation for disclosing violations of laws, rules, and regulations to either a supervisor or a government agency.

52.

Defendant additionally, or in the alternative, took an adverse action against Plaintiff because he refused to participate in and objected to Defendant activities, policies, and practices. Plaintiff reasonably believed these violations did not comply with a law, rule, or regulation.

53.

Defendant DeKalb County violated the Georgia Whistleblower Act by adopting or enforcing policies or practices preventing public employees from disclosing violations of laws, rules, and regulations to either a supervisor or a government agency.

54.

Instead of insuring that Defendant DeKalb County complied with the Georgia Whistleblower Act, Defendant actively sought to violate the Act.

55.

Defendant DeKalb County's actions were willful, wanton, and intentionally directed to harm Plaintiff.

56.

Defendant DeKalb County's actions were reckless and taken in willful disregard of the

probable consequences of its actions.

57.

As a result of Defendant DeKalb County's conduct, Plaintiff has or will suffer lost wages and benefits, and other remuneration, damage to his professional reputation, and mental and emotional distress.

58.

Defendant DeKalb County's actions and failures to act were the proximate cause of the harm suffered by Plaintiff as alleged herein.

## COUNT II
### Attorneys' Fees

59.

Based on the facts alleged above, Plaintiff asserts a claim for attorneys' fees.

60.

By its actions as more particularly described above, Defendant DeKalb County has acted in bad faith, has been stubbornly litigious and has put Plaintiff to unnecessary trouble and expense.

61.

Defendant DeKalb County's willful, deliberate, and bad faith conduct subjects it to an award of attorneys' fees pursuant to O.C.G.A. § 13-6-11 and O.C.G.A. § 45-1-4(f).

## COUNT III
### Race Discrimination—Title VII

62.

Based on the facts alleged above, Plaintiff asserts a race discrimination claim under Title VII.

63.

At all times material to this Amended Complaint, Defendant DeKalb County was an "employer," and Plaintiff was a County "employee," as those terms are defined by Title VII.

64.

Defendant DeKalb County's above-pled conduct toward Plaintiff constitutes race discrimination in violation of Title VII.

65.

Defendant DeKalb County acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

66.

As a result of Defendant DeKalb's unlawful actions, Plaintiff has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

67.

Plaintiff is entitled to an award of back pay and benefits, compensatory damages, attorneys' fees, and all other appropriate damages, remedies, and other relief under Title VII and all federal statutes providing remedies for violations of Title VII.

**COUNT IV**
**Race Discrimination—Section 1981 through Section 1983**

68.

Based on the facts alleged above, Plaintiff asserts a race discrimination claim under 42 U.S.C. § 1981.

69.

At all times material to this Amended Complaint, Plaintiff had an employment agreement with the County under which, inter alia, Plaintiff worked for the County Law Department and the County compensated Plaintiff for his work.

70.

Plaintiff performed his contractual obligations.

71.

Section 1981 prohibits Defendants from discriminating against Plaintiff on the basis of race with regard to the making and enforcing of his employment agreement with the County. Plaintiff's right to be free from race discrimination under § 1981 includes the right to be from race discrimination with respect to discipline.

72.

Defendants undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of State law.

73.

Defendant Brantley's unlawful conduct violated clearly established law.

74.

Defendant Brantley undertook her unlawful conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against her.

75.

Additionally and, in the alternative, Defendant Brantley undertook her unlawful conduct recklessly with respect to the Plaintiff and his federally protected rights, entitling Plaintiff to

recover punitive damages against her.

76.

As a direct and proximate result of Defendants' actions, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

**COUNT V**
**Race Discrimination - Equal Protection Clause**

77.

Based on the facts alleged above, Plaintiff asserts a race discrimination claim under the Equal Protection Clause.

78.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Plaintiff to equal protection under the laws, including equal protection with respect to race.

79.

No compelling or other governmental interest supports the Defendants' use of race as the basis for the employment decisions giving rise to this Amended Complaint.

80.

To the extent any such interest existed, the Defendants' use of racial classifications is not the least restrictive means by which the Defendants could have effectuated such interest.

81.

The Defendants violated the Plaintiff's rights to equal protection by subjecting him to racial discrimination. The Defendants' conduct constitutes unlawful discrimination based upon race, in violation of the Equal Protection Clause.

82.

The Defendants undertook all of the unlawful conduct giving rise to the Plaintiff's claims while acting under color of State law.

83.

As a direct and proximate result of the Defendants' violations of the Equal Protection Clause, Plaintiff has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

84.

Defendant Brantley's unlawful conduct violated clearly established law prohibiting making discipline decisions because of race.

85.

Defendant Brantley undertook her unlawful conduct intentionally and maliciously with respect to Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against her.

86.

Additionally and in the alternative, Defendant Brantley undertook her unlawful conduct recklessly with respect to the Plaintiff and his federally protected rights, entitling Plaintiff to recover punitive damages against her.

## COUNT VI
## Age Discrimination – ADEA

87.

Plaintiff was over the age of forty at his termination.

.

88.

Defendants sought to replace older lawyers with younger lawyers.

89.

Plaintiff was replaced by a younger attorney under the age of forty.

90.

Defendant DeKalb County discriminated against Thompson because of his age, in violation of the ADEA.

91.

Defendant DeKalb County's discriminatory actions have caused Thompson damages including, but not limited to lost wages and benefits.

92.

Defendant DeKalb County's discriminatory acts were willful within the meaning of the ADEA, and Thompson is therefore entitled to liquidated damages under 29 U.S.C. § 626(b).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays that this Court grant the following relief:

(a) That Plaintiff be awarded a declaratory judgment that Defendants violated the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 *et seq.*; Title VII, Section 1981, the Equal Protection Clause and the ADEA;

(b) That Plaintiff be granted judgment against Defendants;

(c) That Plaintiff have and recover from Defendants back pay and fringe benefits, with prejudgment interest thereon;

(d) That Plaintiff have and recover from Defendants reinstatement or front pay and fringe benefits, with prejudgment interest thereon;

(e) That Plaintiff have and recover compensatory damages in an amount to be determined by a jury;

(f) That Plaintiff recover liquidated and punitive damages.

(g) That Plaintiff have and recover his attorney's fees and costs of litigation pursuant O.C.G.A. § 45-1-4(f), O.C.G.A. § 13-6-11and all other applicable federal and state laws; and

(h) Any and other such further monetary, non-monetary, and equitable relief that this Court deems equitable and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted this 16th day of May, 2017.

LEGARE, ATTWOOD & WOLFE, LLC

_____
Eleanor M. Attwood
Georgia Bar No. 514014
emattwood@law-llc.com

400 Colony Square, Suite 1000
1201 Peachtree Street NE
Atlanta, Georgia 30361
Telephone: (470) 823-4000
Facsimile: (470) 201-1212

Counsel for Plaintiff

STATE OF GEORGIA
SUPERIOR COURT OF DEKALB COUNTY

MARK A. THOMPSON, :
:
    Plaintiff, : CIVIL ACTION
: FILE NO. 16-cv-5485-4
:
:
: **JURY TRIAL DEMANDED**
:
DEKALB COUNTY, GA, :
:
    Defendant. :

### CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2017, I electronically filed the redacted version of **PLAINTIFF'S AMENDED COMPLAINT** using the Court's Odyssey eFileGA system and hand delivered the unredacted version under seal to Judge Flake and served a copy of the same via email and U.S. Mail on the following attorneys of record:

Randy Gepp
Taylor English Duma LLP
1600 Parkwood Circle, SE
Suite 400
Atlanta, GA 30339
rgepp@taylorenglish.com

                              LEGARE, ATTWOOD & WOLFE, LLC

                              _____
                              Eleanor M. Attwood
                              Georgia Bar No. 514014
                              emattwood@law-llc.com